UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CAPITAL PROMOTIONS, L.L.C., | ) | |
| a Limited Liability Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:10-CV-0048HEA |
| | ) | |
| DON KING PRODUCTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Don King Productions, Inc.'s ("DKP" hereinafter) Motion for Summary Judgment [ECF No. 39]. Plaintiff Capital Promotions, L.L.C. ("Capital") filed a Memorandum in Opposition to DKP's motion [ECF No. 45], to which DKP replied [ECF No. 52]. For the reasons set forth below, DKP's motion is granted.

## **Factual Background**[1]

Capital filed this action against DKP on January 12, 2010, alleging intentional interference with contractual relationships (Count I), fraud (Count III), conspiracy to interfere with contractual relationships (count V), and *prima facie* tort (Count VII) relative to an agreement between DKP and Walter Tyeson Fields ("Fields") for a

---

[1] The Court's recitation of the facts is drawn form the parties' statements of material facts filed in conjunction with Fraternity Defendants' motion for summary judgment and Plaintiff's opposition.

bout between Fields and Ray Lunsford in St. Louis, Missouri, on February 5, 2005 ("St. Louis Fight"). Capital contends that it had a Promotional Rights Agreement ("PRA") with Fields, of which DKP was aware, providing Capital with exclusive rights to promote all fights for Fields. Plaintiff also seeks punitive damages against DKP (Counts II, IV, VI, and VIII).

Capital and Fields signed a PRA in February 2000. The PRA granted Capital exclusive rights to schedule fights involving Fields from February 4, 2000 through February 4, 2005, unless otherwise noted. Pursuant to the terms of the PRA, Capital was to provide Fields with a minimum of four fights per year during the term of the PRA. In order for a bout to be arranged under the PRA, the agreement required Fields and Capital to execute Capital's customary bout agreement and/or the standard boxing contract required by the athletic or boxing commission with jurisdiction over the bout. In September of 2003, Fields fought Sherman Williams for a purse of $18,000. Although the reasons are disputed, there was an issue with this check clearing. In December of 2003, Fields fought Julius Long in a fight promoted by Capital for a purse of $10,000. The check for the purse, tendered by Capital to Fields, bounced. After the second purse payment from Capital to Fields bounced, Fields retained counsel to represent him and refused to speak to Capital directly. Fields testified that as of January of 2004, Fields did not believe that Capital was his promoter. On January 15, 2004, the law firm of Kolesar and

Leathem sent a letter to Capital claiming that Capital had breached the PRA with Fields, and that the PRA was terminated.[2]

On November 8, 2005, Fields and Capital began a three day arbitration proceeding administered by the American Arbitration Association ("AAA"). The proceeding was styled "*Walter Tyeson Fields, Claimant, and Capital Promotions, LLC and Bob Stupak Presents, LLC,* Arbitration No. 79 181 00070 05" (the "Arbitration"). Capital was represented by counsel, it introduced exhibits, it presented testimony from three witnesses, and cross-examined three other witnesses. The Arbitrator's Award stated in part:

Based upon the foregoing, it is the Arbitrator's decision:

> (1) CAPITAL take nothing by way of its alleged claims which were never properly filed with AAA.
> (2) FIELDS be awarded the contractual amount of $2,500 per fight for the three fights not scheduled by CAPTIAL during the remaining term of the PRA, which ended on August 4, 2005, for a total amount of $7,500.
> (3) CAPITAL pay cost of Arbitration of Claimant.
> (4) CAPITAL pay attorney fees of Claimant in the amount of $10,000, for total award of attorney fees to Claimant of $15,000.
> (5) CAPITAL pay all other costs of this Arbitration submitted by AAA with fifteen days of this decision.

---

[2] Plaintiff disputes that the Law Office of Kolesar & Leatham represented Fields at the time they dispatched the letter; however, upon review of the January 15, 2004 correspondence, it is clear to the Court that Kolesar & Leatham were contacting Plaintiff on behalf of Fields, their client. *See* ECF No. 39, Exh. 4.

ECF No. 39, Exh. G at 7.[3]

## Summary Judgment Standard

The standard for summary judgment is well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v.DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v. City of Kansas City, Mo.,* 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Littrell* , 459 F.3d at 921. "The party opposing summary judgment may not rest on the allegations in its pleadings; it must 'set forth specific facts showing that there is a genuine issue for trial.'" *United of Omaha Life Ins. Co.*

---

[3] The Arbitrator's Award was confirmed by the District Court for Clark County, Nevada on June 8, 2006.

*v. Honea,* 458 F.3d 788, 791 (8th Cir.2006) (quoting Fed.R.Civ.P. 56(e)); "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248; *Woods,* 409 F.3d at 990.

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. *Wilson v. Int'l Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir.1995). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung,* 422 F.3d 630, 638 (8th Cir. 2005). Summary Judgment will be

granted when, viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Samuels v. Kansas City Mo. Sch. Dist.,* 437 F.3d 797, 801 (8th Cir. 2006). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin,* 483 F.3d 516, 526-7(8th Cir. 2007). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines,* 2008 WL 2609197, 3 (8th Cir. 2008).

## **Discussion**

Defendant DKP requests that the Court grant it summary judgment on all counts on the grounds that, as a matter of law, Capital is collaterally estopped from contesting that it committed a prior, material breach of the PRA and that Fields's participation in the St. Louis fight was not a breach of the PRA. Further, DKP suggests that the Court grant it summary judgment because it was the actions of Capital, not DKP, that caused Capital to sustain any of its alleged injuries. Additionally, Defendant argues the Court should grant DKP summary judgment because Capital cannot prove that it sustained any damage as a result of DKP's

conduct. And finally, DKP contends that summary judgment is appropriate in favor of DKP because the claims for punitive damages and/or conspiracy are dependent upon the other claims on which DKP should be granted summary judgment.

*Issue Preclusion / Collateral Estoppel*

DKP contends that Capital is precluded from re-litigating any issue in this case that is identical to an issue decided in the Arbitration. Courts are to look at state law in determining whether to apply issue preclusion, also known as collateral estoppel. *Royal Ins.Co. of Am. v. Kirksville Coll. Of Osteopathetic Med., Inc.,* 304 F.3d 804, 807 (8th Cir.2002). Under Missouri law, three factors are considered in determining whether to apply the doctrine of collateral estoppel: (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party in privity with a party to the prior adjudication. *Liberty Mut. Ins.Co. V. FAG Bearings Corp.,* 335 F.3d 752, 758 (C.A.8 Mo. 2003). In some cases, courts are to apply an additional factor when analyzing collateral estoppel. *Id.* In instances where non-mutuality exists among the parties in the previous and current litigations, courts are to determine whether the party against whom preclusion is asserted had a "full and fair opportunity" to litigate the issue. *Id.* quoting *Aetna Cas. & Sur. Co. v. Gen.*

7

*Dynamics Corp.,* 968 F.2d 529, 532-533. Where there has been a final and binding arbitration between parties, courts are collaterally estopped from re-litigating the facts determined in the arbitration proceeding. *Pratt v. Purcell Tire and Rubber Co., Inc.*, 846 S.W.2d 230, 233 (8th Cir.1993).

With regard to the elements of collateral estoppel, Capital agrees with Defendant DKP that the issue in the first action was identical to the issue in the present action. Further, Capital agrees with DKP that the Arbitration Award is a final judgment on the merits. Capital also agrees that DKP was in privity with Fields, and that the third collateral estoppel factor has been met. Thus, Capital admits that the collateral estoppel elements have been met with regard to the Arbitrator's Award; however, Capital's interpretation of the Award differs from DKP's. Capital contends the Arbitrator found the PRA valid through August 4, 2005 and that Defendant is precluded from arguing that Capital did not have an enforceable contract with Tye Fields on February 5th of 2005.

While the Arbitrator's Award is by no means a beacon of clarity, there are firm conclusions to be drawn from it. Specifically, the Arbitrator held that Capital failed to schedule the agreed upon number of fights, which was four fights per year. The plain language of the Arbitrator's Award states, "CAPITAL, by failing to fulfill its contractual obligation as to the number of fights promoted for Fields in *said time*

8

*frame*, breached the PRA." ECF No. 39, Exh. G at 6 (emphasis added). To determine the time frame to which the Arbitrator was referring, the Court had to look no further than the two paragraphs immediately preceding the "said time frame" language. Upon review of the Award, the time frame to which the Arbitrator was referring was "July 10, 2004 through February 4, 2005." *Id.* During that period–as the Arbitrator pointed out–Capital only promoted one fight on October 8, 2004. Thus, the Arbitrator held that Capital failed to promote two more fights from July 10, 2004 through February 4, 2005, which resulted in a breach of the PRA. *See Id.* As such, Capital was in breach of the PRA prior to the St. Louis Fight on February 5, 2005.

Plaintiff contends that it did not breach the PRA, as the Arbitrator held, because the Arbitrator found that the term of the PRA ended on August 4, 2005. While Plaintiff's assertion carries some truth, its conclusion still misses the mark. According to the Award, "FIELDS was injured and due to the injury he could not fight for approximately six months." *Id.* at 4. As such, the Arbitrator held that the term of the PRA "ended on August 4, 2005 by having the additional six month period tacked on to the [end of the February 4, 2005] term." *Id.* While the Court finds this suggestion confusing, it does not negate the Arbitrator's ultimate holding: that Capital breached the PRA by failing to schedule the agreed upon number of

9

fights per year. The alleged August 4, 2005 extension discussed earlier in the Award is essentially irrelevant in light of the Arbitrator's ultimate finding that Capital breached the PRA in February of 2005. Furthermore, Plaintiff offers no evidence that it produced additional valid bout agreements for the agreed upon number of fights through February 4 or August 4 of 2005, which could have potentially prevented Capital from breaching the PRA.

Additionally, the Court is puzzled by the apparent six month extension in light of the terms of the PRA. Paragraph 7, titled "Disability or Postponement" states the following:

> Should any bout(s) arranged and scheduled pursuant to the terms of this Agreement be postponed due to injury or disability of Fighter, or any other reason directly attributable to Fighter, the obligations of Fighter and Manger [*sic*] relating to the bouts, and the terms of this Agreement, shall automatically be extended for the period of any such postponement and/or injury or disability and for reasonable training period thereafter. . . . Promoter shall give Fighter written notice in the event that Promoter believes that the term of this Agreement has been extended pursuant to this Paragraph. . . .

ECF. No 39, Exh. E, Promotional Rights Agreement at ¶ 7.

Pursuant to the PRA, if Capital believed that the term of the PRA was to be extended, it was required to send Fields written notice via certified mail, return receipt requested and postage prepaid. *Id.* ¶ 7 and ¶ 19. While it is true that Capital made an attempt to trigger an extension pursuant to the PRA, Capital failed to

10

follow the proper procedures that were clearly outlined in the PRA. *Id. See* Paul Scieszinski's Email, ECF No. 46-2, The District Court of Clark County, Nevada also addressed the Arbitrator's error with regard to the extension. "The extension of the contract as found by the arbitrator is questionable in that it is not supported by the language of the contract. This error, however, does not warrant setting aside the arbitration award because it prejudiced FIELDS, not CAPITAL." ECF No. 39, Exh. H, Judgment at p. 4.

Furthermore, the language of the Award in no way suggests that Fields or DKP violated the PRA; it only states that Capital breached the PRA. In fact, the Arbitrator addressed Plaintiff's contention that Fields violated the PRA and swiftly dismissed the argument. Capital alleged that when Fields hired Billy Baxter as manager and Elliot Eisner as his attorney, Fields prevented Capital from promoting fights. The Arbitrator quickly dismissed the argument and held that "Capital's allegation that somehow Fields' [sic] obtaining professional representation was a breach of the PRA IS NOT SUSTAINABLE." *Id.* Thus, the Arbitrator found that Fields did not breach the PRA.[4] As such, Capital is precluded from arguing that a)

---

[4] Even Paul Scieszinski, Capital's lawyer throughout the earlier proceedings and the Arbitration, opined that it was his understanding that the Arbitrator found that Capital breached the PRA, and that Fields did not breach the PRA, by participating in the St. Louis Fight. Scieszinksi Depo, ECF No. 39-2, pg. 8 (Depo. pg. 28, ln. 20 - pg.29, ln. 6).

Fields breached the PRA, and b) Capital did not breach the PRA.

### *Counts I and V - Intentional Interference with Contractual Relationship & Conspiracy to Intentionally Interfere with Contractual Relationship*

Capital alleges that DKP conspired with Billy Baxter, Bob Stupak and others to intentionally and wrongfully interfere with Fields and Capital's PRA. Under Missouri law, the elements of tortious interference with a contract expectancy are: (1) a contract, (2) defendant's knowledge of contract, (3) intentional interference by defendant inducing or causing breach of contract, (4) absence of justification, and (5) damages. *Wash Solutions, Inc., v. PDQ Mfg., Inc.,* 395 F.3d 888, 895 (8th Cir.2005). The parties arbitrated this issue already and the Arbitrator found that neither Fields nor DKP breached the PRA, and that it was in fact Capital who breached the PRA. The Arbitrator's Award rejected the argument that Billy Baxter interfered with Fields and Captial's PRA and found that Capital breached the PRA failing to provide the agreed upon number of fights. ECF No. 39, Exh. G at 5-6. The Arbitrator stated that there was nothing in the PRA to preclude Fields from hiring Baxter, and even went to so far to say that it would have been "foolish" of Fields to have not hired Baxter to represent his interests. *Id.* at 5. As such, neither DKP nor Baxter tortiously interfered with Captial and Fields's PRA, and Capital is precluded from arguing such.

Assuming *in arguendo* that Capital wasn't precluded from bringing Count I, DKP would still be entitled for summary judgment on the claim because DKP's ability to enter into the agreement with Fields for the February 5, 2005 St. Louis Fight was considered justified in light of Capital's breach. *See Wash Solutions, Inc*, 395 F.3d at 895-896 (holding that in order to have a claim for interference with a valid business expectancy, it is necessary to determine if the expectancy claimed was valid under the circumstances alleged. If it was not, there was nothing for defendants to have interfered with). Additionally, pursuant to the Arbitrator's Award, and for these same reasons detailed above, Plaintiff is precluded from alleging conspiracy to tortiously interfere with the alleged contractual relationship between Capital and Fields. As such, DKP is entitled to summary judgment on Capital's Count I and V.

### *Count III - Fraud*

DKP contends that it is entitled to summary judgment on Capital's fraud claim. Capital alleges that DKP acknowledged that Capital was Fields' promoter, attempted to schedule fights with Fields through Capital, and represented to Capital that DKP would honor Capital's agreement with Fields. ECF No. 1 at 5-6. Under Missouri law, there are nine essential elements of fraud, and failure to establish any one is fatal to recovery. *Trimble v. Pracna*, 167 S.W.3d 706, 712 (Mo. 2005). The nine essential elements are: (1) a representation; (2) its falsity; (3) its materiality; (4)

the speaker's knowledge of its falsity, or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Id.* (citing *Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. banc 1988)).

DKP denies that it ever made such a representation, and Plaintiff has failed to produce evidence that would support such a claim. Plaintiff alleges that DKP represented that it would honor the agreement between Capital and Fields. Plaintiff's assertion is merely an allegation, unsupported by specific facts or any evidence beyond its own conclusion. *See Thomas,* 483 F.3d at 526-527. As such, the claim fails and DKP is entitled to summary judgment on the fraud claim. Furthermore, as discussed above at great length, the Arbitrator found that Capital breached the PRA between Fields and Capital prior to the St. Louis Fight. Thus, even if Capital were to present evidence that DKP made a representation that it would honor the PRA between Fields and Capital, such an obligation was immediately negated upon Capital's breach. Therefore, DKP is entitled to summary judgment on Capital's fraud claim.

### *Count VII -* **Prima Facie** *Tort*

Capital alleges that DKP intentionally committed "the above acts" to cause injury to Capital by interfering with Capital's contractual relationship with Fields and its business expectancy. "A claim alleging a *prima facie* tort 'is disfavored under Missouri law, particularly when a party has another remedy or other potentially submissible tort claims available.'" *Tamko Roofing Products, Inc. v. Smith Engineering Co.,* 450 F.3d 822, 830-831 (8th Cir.2006) (citing *Rice v. Hodapp*, 919 S.W.2d 240, 246 (Mo. banc 1996)). *Prima facie* tort is a "particular and limited theory of recovery" whose elements include: (1) an intentional lawful act by defendant; (2) defendant's intent to injure the plaintiff; (3) injury to the plaintiff; and (4) absence of or insufficient justification for defendant's act. *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 315 (Mo. banc 1993). Here, Capital's *prima facie* tort claim is nothing more than a mere accusation, unsupported by specific facts or any evidence beyond its own conclusion. *See Thomas,* 483 F.3d at 526-527. Plaintiff's lack of factual support reveals that this claim was nothing more than a "catchall remedy of last resort" for a claim that is "not otherwise salvageable under traditional causes of action", which is prohibited under Missouri law. *Id.* Due to Plaintiff's lack of factual support, Capital's *prima facie* tort claim fails and DKP is entitled to summary judgment.[5]

---

[5] Furthermore, pursuant to the collateral estopple doctrine, Capital is precluded from alleging *prima facie* tort for the same reasons it was precluded from bringing Count I (Intentional

### *Counts II, IV, VI & VIII - Punitive Damages*

Capital's Counts II, IV, VI and VIII are all separate counts that seek relief in the form of punitive damages. Generally, punitive damages are appropriate only where the conduct of the defendant is outrageous because of defendant's evil motive or reckless indifference to the rights of plaintiff. *Carpenter v. Chrysler Corp.,* 853 S.W.2d 346, 364 (Mo.App. E.D. 1993). A punitive damage claim is not a separate cause of action, it must be brought in conjunction with a claim for actual damages. *Misischia v. St. John's Mercy Med. Ctr.,* 30 S.W.3d 848, 866 (Mo.App. E.D.2000). Thus, "[a] plaintiff must prevail on his or her underlying claim to submit punitive damages to the jury." *Kelly v. State Farm Mut. Auto. Ins. Co.,* 218 S.W.3d 517, 526 (Mo.App. W.D.2007) (citing *Romeo v. Jones,* 144 S.W.3d 324, 334 (Mo.App. E.D.2004). Because DKP is entitled to summary judgment on Capital's Counts I, III, V and VII, all of Capital's corresponding punitive damages claims (Counts II, IV, VI and VIII) also necessarily fail.

### **Conclusion**

Pursuant to the doctrine of collateral estoppel, Capital is precluded from bringing Counts I and V. Furthermore, DKP would still be entitled to summary judgment on both counts because Capital has failed to prove the proper elements of

---

Interference with Contractual Relationship) and Count V (Conspiracy to Intentionally Interfere with Contractual Relationship).

a tortious interference with a contractual relationship claim. DKP is also entitled to summary judgment relief for Capital's fraud and *prima facie* tort claims (Counts III and VII, respectively) due to Capital's failure to "substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Wilson,* 62 F.3d at 241. And finally, in light of DKP's entitlement to summary judgment relief on Counts I, III, V and VII, Capital's corresponding punitive damages claims (Counts II, IV, VI and VIII) also fail as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Don King Productions, Inc.'s Motion for Summary Judgment [ECF No. 39] is **GRANTED**.

Dated this 22nd day of January, 2013.

_____
  HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE